UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

FORT PIERCE DIVISION

MARCEL MCGRAY, Plaintiff,

v.

BRAUNABILITY and MOBILITYWORKS, Defendants.

Case No.: 9:26-cv-80286-AMC

AMENDED COMPLAINT

Plaintiff, Marcel McGray, files this Amended Complaint against Defendants BraunAbility and MobilityWorks and states:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and related federal civil rights and consumer protection laws.
2. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in this District and Defendants conduct business here.

## II. PARTIES

3. Plaintiff, Marcel McGray, is a disabled individual residing in Palm Beach County, Florida, who relies on an ADA-equipped wheelchair accessible vehicle for mobility, safety, and daily life.
4. Defendant BraunAbility manufactures mobility conversion systems and conducts business in Florida.
5. Defendant MobilityWorks sells, services, and repairs ADA-equipped vehicles and conducts business in Florida.

## III. FACTUAL ALLEGATIONS

### A. Purchase and Conversion

6. In November 2023, Plaintiff purchased a used 2023 Chrysler Pacifica for the purpose of having it converted into a wheelchair accessible vehicle.

7. Between January and February 2025, the vehicle underwent a BraunAbility mobility conversion, including installation of a ramp system, kneeling system, door motors, electrical integration, and related ADA components.

8. The vehicle initially operated normally following the conversion.

## B. Early Failures in 2025

9. In June 2025, at approximately 8,033 miles, the vehicle began experiencing repeated failures of the conversion system, including ramp malfunctions, door failures, kneeling system failures, and complete electrical shutdowns that disabled major vehicle systems, including the windows, door locks, air conditioning, radio, and other electrical components.

10. Plaintiff reported these failures to MobilityWorks repeatedly throughout 2025.

11. On July 24, 2025, the vehicle was brought to MobilityWorks for major electrical failures, including loss of drivability and complete electrical shutdowns that disabled major vehicle systems.

12. Repair Order LWR970786 documents that Plaintiff reported a "pop" while driving, followed by complete electrical shutdowns and cracked interior panels.

13. The same repair order states that BraunAbility Case 503813 was opened and that the vehicle had 49 stored codes in history.

14. MobilityWorks reported that it "could not detect failure," and returned the vehicle without identifying the root cause.

15. The repair order further documents that the vehicle repeatedly failed during rainstorms, that the passenger side door track contained standing water, and that BraunAbility instructed MobilityWorks to drill additional drain holes due to inadequate drainage.

16. Despite these issues, the vehicle was returned to Plaintiff multiple times with unresolved electrical and safety-critical defects.

## C. Continued Failures Into 2026

17. By early 2026, the vehicle continued to experience sudden complete electrical shutdowns that disabled major vehicle systems, ramp failures, door failures, and kneeling malfunctions that left Plaintiff stranded or trapped inside the vehicle.

18. On February 16, 2026, Plaintiff returned the vehicle to MobilityWorks for complete electrical shutdowns affecting the doors, air conditioning, radio, windows, door locks, and other systems.

19. On February 20, 2026, MobilityWorks informed Plaintiff that its technician found bare, exposed wires in the passenger side C pillar and that touching the wires together caused complete electrical shutdowns of the doors, radio, and air conditioning.

20. Plaintiff immediately requested photographs of the damaged wiring, a written explanation of the root cause, confirmation of whether the wiring was OEM or conversion wiring, and full diagnostic documentation.

21. Later that day, MobilityWorks Regional Service Manager Rhys Fenech informed Plaintiff that BraunAbility's Senior Technical Team had confirmed a fault with the two OEM CAN bus lines.

22. Plaintiff informed MobilityWorks that he had twice offered the driver's seat to MobilityWorks—once when the loaner was delivered and again when the vehicle was dropped off—and MobilityWorks declined both times.

**D. Repair Order Confirming Root Cause**

23. Repair Order LWR1037171 documents that two OEM CAN bus wires in the passenger side C pillar were pinched with exposed conductors.
24. The failure was duplicated multiple times by manually touching the exposed CAN wires together, causing complete electrical shutdowns of the radio and power doors.
25. The repair order states: "This confirms the root cause as damaged CAN bus wiring due to improper wire retention in the C pillar."
26. The repair order documents that the wires were repaired by soldering and insulating the exposed conductors and securing all wiring to prevent future contact or chafing.

**E. Plaintiff Requests Documentation Before Accepting the Vehicle**

27. On February 20, 2026, Plaintiff informed MobilityWorks that because the failure involved multiple complete electrical shutdowns, loss of door function, loss of climate control, and an incident where Plaintiff was trapped inside the vehicle, he required documentation before accepting the vehicle.
28. Plaintiff requested photos of the damaged CAN bus wiring before and after repair.
29. Plaintiff requested a written explanation of how the wiring became damaged, including whether the harness was accessed or modified during the conversion.
30. Plaintiff requested a full diagnostic report from MobilityWorks and BraunAbility's Senior Technical Team.
31. Plaintiff requested confirmation from BraunAbility engineering that the root cause had been identified and that the failure could not recur.
32. Plaintiff requested verification of whether the damaged wiring was located in an area modified during the conversion.
33. Plaintiff informed MobilityWorks that he could not safely accept the vehicle until this documentation was provided.

**F. BraunAbility Refuses Engineering Documentation (Feb. 24)**

34. On February 24, 2026, BraunAbility Associate Director Elaine Haschel informed Plaintiff that BraunAbility believed it had "already exceeded what is required."
35. BraunAbility stated that its engineers "do not perform repair narratives" and that Plaintiff must rely solely on MobilityWorks' repair orders.
36. BraunAbility stated that photos and supplementary materials were "internal" and would not be provided.
37. BraunAbility stated that no additional engineering analysis was "warranted or required."
38. BraunAbility stated that the vehicle had been "returned as operating as intended," despite repeated failures.

**G. BraunAbility Issues Ultimatum (Feb. 27)**

39. On February 27, 2026, BraunAbility informed Plaintiff that it had provided all information it was "able to offer."
40. BraunAbility offered Plaintiff a refund only if he signed a settlement agreement requiring him to part ways with both BraunAbility and MobilityWorks, permanently ending all future service, support, and warranty rights with both companies.
41. The proposed refund consisted of approximately $45,000 to reimburse Florida Vocational Rehabilitation (VR) for the cost of the mobility conversion, and reimbursement of 26 monthly payments Plaintiff had already made on the vehicle, totaling approximately $25,000.
42. BraunAbility stated that it "does not believe we can continue to service your vehicle."
43. BraunAbility stated that Plaintiff "may be better served by a different manufacturer and dealer."
44. BraunAbility offered Plaintiff the option of accepting the vehicle "in its current condition."

**H. BraunAbility Threatens to End Rental Coverage (Mar. 3)**

45. On March 3, 2026, BraunAbility informed Plaintiff that "no further information" would be provided.
46. BraunAbility stated that "no additional alternatives will be offered."
47. BraunAbility informed Plaintiff that effective March 6, 2026, BraunAbility would no longer cover the rental vehicle.
48. BraunAbility stated that Plaintiff would be responsible for the full daily rental rate beginning March 6.
49. Plaintiff informed BraunAbility that removing the rental vehicle would create an ADA hardship because BraunAbility had removed his only accessible vehicle and had not certified it safe.

**I. MobilityWorks Threatens to Report Rental Vehicle Stolen (Mar. 9–10)**

50. On March 9, 2026, MobilityWorks Director of Service Quality and Compliance Trevorr Jurgensen emailed Plaintiff stating he had left multiple voicemails and demanded contact.
51. On March 10, 2026, MobilityWorks emailed Plaintiff stating: "We will be reporting the vehicle stolen this afternoon unless it is returned."
52. Plaintiff informed MobilityWorks that he was "genuinely surprised and disappointed" to receive a stolen vehicle threat.
53. Plaintiff informed MobilityWorks that he is an ADA-dependent customer waiting for engineering documentation confirming the safety of his own vehicle.
54. Plaintiff informed MobilityWorks that he had never refused to return the rental vehicle.
55. Plaintiff informed MobilityWorks that he would return the rental vehicle immediately once the required safety documentation was provided.
56. Plaintiff informed MobilityWorks that implying criminal intent toward a disabled customer created unnecessary escalation.

**J. Police Confrontation With Plaintiff's Wife (Mar. 27)**

57. On March 27, 2026, Defendant MobilityWorks reported the rental vehicle as stolen to the Palm Beach County Sheriff's Office.

58. Defendant MobilityWorks represented to law enforcement that Plaintiff had not responded to multiple attempts to contact him, despite Plaintiff's documented daily email communication.

59. Defendant MobilityWorks knew Plaintiff communicates exclusively by email due to disability-related needs and had been in continuous written contact with him, yet falsely claimed they "attempted phone calls" knowing Plaintiff would not answer calls and had repeatedly requested all communication be in writing.

60. Law enforcement located the rental vehicle at a restaurant where Plaintiff's wife was attending a work-related dinner with her supervisors and coworkers.

61. Plaintiff's wife was confronted by multiple law enforcement officers in the parking lot, causing fear, embarrassment, and distress.

62. Plaintiff's wife had no involvement in the dispute and was not the renter of the vehicle.

63. Plaintiff's wife informed the officers that she was not the owner and directed them to Plaintiff.

64. Law enforcement determined the matter was civil in nature and did not take enforcement action.

65. Defendant MobilityWorks' actions caused unnecessary escalation, emotional distress, and reputational harm.

**K. MobilityWorks Refuses Documentation (Mar. 26)**

66. On March 26, 2026, MobilityWorks informed Plaintiff that no additional repair summary existed.

67. MobilityWorks stated that no "safety clearance documentation" existed for the chassis or conversion.

68. MobilityWorks stated that no written release or return-to-customer documentation existed for the vehicle's return.

69. MobilityWorks stated that the vehicle was transported to Plaintiff's home without his consent because they "could no longer store the vehicle."

70. MobilityWorks stated that the rental agreement was in Plaintiff's name and that BraunAbility only covered the dates it authorized.

**L. Resulting Harm**

71. Defendants never provided a permanent repair, replacement vehicle, or full documentation.

72. Plaintiff's mobility, independence, and safety were repeatedly compromised.

73. Plaintiff acted reasonably and responsibly at all times.

74. Defendants' conduct resulted in multiyear loss of mobility, repeated safety risks, and significant personal hardship.

75. On March 20, 2026, Plaintiff received a text message from Native Towing & Transport LLC demanding payment for the towing of Plaintiff's vehicle from MobilityWorks to

Plaintiff's residence. The vehicle was delivered on a flatbed without Plaintiff's consent, and the towing company's payment request was sent directly to Plaintiff's personal phone number, despite Plaintiff never authorizing or requesting the tow.

76. After Defendants removed the loaner vehicle, Plaintiff was left without any usable transportation and was forced to continue making monthly payments of approximately $940, plus insurance, on a vehicle that remained inoperable. Plaintiff also incurred ongoing rental vehicle expenses of approximately $1,200 to $1,400 every four weeks, creating significant and continuing financial hardship directly caused by Defendants' actions.

77. Throughout these events, neither BraunAbility nor MobilityWorks accepted responsibility for the failures affecting Plaintiff's vehicle. Instead, each party repeatedly attempted to shift blame onto the other, leaving Plaintiff without answers, without documentation, and without a safe, functional ADA-equipped vehicle.

78. On March 27, 2026, Defendant MobilityWorks reported Plaintiff and Plaintiff's wife for felony grand theft of a motor vehicle, despite knowing that Plaintiff communicates exclusively in writing due to disability-related needs and had been in continuous daily email contact with MobilityWorks. MobilityWorks falsely represented to law enforcement that Plaintiff was unresponsive, even though Plaintiff had repeatedly confirmed his willingness to return the rental vehicle upon receipt of required safety documentation. Law enforcement classified the report as a felony grand theft allegation and located the rental vehicle while Plaintiff's wife was attending a work-related dinner, resulting in her being confronted by multiple officers in public. Officers ultimately determined the matter was civil in nature. The false felony accusation caused Plaintiff and his family significant emotional distress, humiliation, reputational harm, and fear of criminal consequences, and constituted an unnecessary and retaliatory escalation against a disabled customer seeking safety information.

## IV. CLAIMS FOR RELIEF

## COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

79. Plaintiff incorporates all prior paragraphs.
80. Defendants failed to provide safe, accessible, and functional ADA mobility equipment.
81. Defendants' actions interfered with Plaintiff's ability to safely access and use an ADA-equipped vehicle, resulting in prolonged loss of mobility.
82. Defendants' conduct denied Plaintiff equal access, mobility, and independence.
83. Plaintiff suffered harm as a result.

## COUNT II – NEGLIGENCE

84. Plaintiff incorporates all prior paragraphs.
85. Defendants owed Plaintiff a duty to provide safe ADA equipment, competent repairs, accurate information, and adequate warnings.

86. Defendants breached that duty through unsafe workmanship, failure to diagnose, refusal to provide documentation, failure to warn of known safety-critical defects, and coercive conduct.
87. The harm to Plaintiff was foreseeable because Defendants were aware that the vehicle experienced complete electrical shutdowns and that Plaintiff relied on the vehicle for ADA-related mobility.
88. Defendants' conduct created an unreasonable risk to a disabled customer who depended on the vehicle for safe mobility.
89. Plaintiff suffered damages as a direct result.

## COUNT III – BREACH OF WARRANTY

90. Plaintiff incorporates all prior paragraphs.
91. Defendants represented the ADA conversion system as safe and reliable.
92. Defendants failed to honor warranty obligations by returning the vehicle in unsafe condition, refusing to provide safety validation, refusing to document the repair, and conditioning reimbursement on Plaintiff severing all future warranty rights.
93. Plaintiff suffered damages as a result.

## COUNT IV – DECEPTIVE AND UNFAIR TRADE PRACTICES (FDUTPA)

94. Plaintiff incorporates all prior paragraphs.
95. Defendants engaged in deceptive and unfair conduct, including withholding documentation, returning the vehicle in unsafe condition, threatening to end rental coverage, and reporting the rental vehicle stolen despite Plaintiff's continuous communication.
96. Defendants engaged in bad-faith handling of Plaintiff's safety concerns, including withholding documentation, refusing engineering confirmation, and escalating the matter through threats and false criminal accusations.
97. Defendants' conduct caused Plaintiff substantial injury.

## V. DAMAGES

98. Plaintiff seeks compensatory, consequential, and statutory damages in an amount to be determined at trial.
99. Plaintiff seeks injunctive relief requiring Defendants to correct the defects, provide a safe ADA-compliant vehicle, or replace the vehicle.

## VI. JURY DEMAND

100. Plaintiff demands trial by jury on all issues so triable.

## VII. SIGNATURE

Respectfully submitted,

Marcel McGray

6379 Dogwood Lane

Lantana, Florida 33462

Phone: 561-365-7454

Email: Marcel.McGray@gmail.com

Date: 05/20/2026

Marcel McGray

6379 Dogwood Lane

Lantana, Florida 33462

Phone: 561-365-7454

Email: Marcel.McGray@gmail.com

Date: 05/20/2026

Via Email Eric D. Olson,

Attorney for BraunAbility

Eric.Olson@BowmanAndBrooke.com

Re: Service of Process – Case No. 9:26-cv-80286 AMC

Mr. Olson,

Enclosed please find the Summons and Amended Complaint in the matter of Marcel McGray v. BraunAbility. These documents are being served upon you pursuant to your written agreement to accept service on behalf of BraunAbility.

Respectfully,

Marcel McGray

Marcel McGray

6379 Dogwood Lane

Lantana, Florida 33462

Phone: 561-365-7454

Email: Marcel.McGray@gmail.com

Date: 05/20/2026


Via Certified Mail

Auto Mobility Sales, Inc.

c/o Registered Agents, Inc.

7901 4th St N

Suite 300 St. Petersburg, FL 33702

Re: Service of Process – Case Number 9:26-cv80286-AMC


To Whom It May Concern,

Enclosed please find the Summons and Amended Complaint in the matter of Marcel McGray v. MobilityWorks. These documents are being served upon you pursuant to the Federal Rules of Civil Procedure.

Respectfully,

Marcel McGray